# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Leticia Macias, Juan Garcia,**
**Elizabeth Magana Zamora,**
**San Juanita Schneider, Ashley Negrete,**
**N.N., a minor by and through her next friend**
**Ashley Negrete, Timothy Curry, and Juan Carlos Vasquez,**
**on behalf of themselves and all others**
**similarly situated,**

        **Plaintiffs,**

**v.**                                    **Case No. 19-cv-2305-JWL**

**BNSF Railway Company; Miles Leasing, LLC;**
**Unified Government of Wyandotte County and**
**Kansas City, Kansas; Terminal Consolidation Co.;**
**Nickell Properties, LLC; Amino Bros. Co., LLC;**
**and Jane/John Doe Construction Companies,**

        **Defendants.**

## MEMORANDUM AND ORDER

Plaintiffs filed this lawsuit against defendants asserting state law claims of trespass, nuisance, negligence and inverse condemnation stemming from the flooding of plaintiffs' properties, located in the Argentine neighborhood of Kansas City, Kansas, between June 2017 and August 2017.  This matter is presently before the court on motions to dismiss filed by four of the six named defendants—BNSF Railway Company (doc. 93); the Unified Government (doc. 91); Terminal Consolidation Company (doc. 95); and Nickell Properties, LLC (doc. 100).  In response to the motions to dismiss, plaintiffs have filed substantive responses to the motions as well as a motion for leave to amend their complaint, seeking leave to file a fourth amended complaint (doc. 115).  As will be explained, the court will permit the filing of the amended

complaint, consistent with the parameters set forth below.[1]  The court grants in their entirety the motions to dismiss filed by defendants Terminal Consolidation Company and Nickell Properties, LLC.  Those defendants are dismissed from this lawsuit.   The court grants in part and denies in part the motion to dismiss filed by BNSF—plaintiffs' claims for intentional trespass, public nuisance, intentional private nuisance and inverse condemnation are dismissed against BNSF, but plaintiffs' claims for negligent trespass, private nuisance based on negligence, and negligence survive the motion to dismiss.  The court grants in part and denies in part the motion to dismiss filed by the Unified Government—plaintiffs' claims for intentional trespass, public nuisance, and intentional private nuisance are dismissed against the Unified Government, but plaintiffs' claims for negligent trespass, private nuisance based on negligence, negligence and inverse condemnation survive the motion to dismiss.

*Motion for Leave to Amend the Complaint*

In response to defendants' motions to dismiss, plaintiffs have filed a motion for leave to amend their complaint.  In the interest of efficiency, the court resolves this motion first to determine which complaint to test against the motions to dismiss.  Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend "shall be freely given when justice so requires." *See Minter v. Prime Equip. Co*., 451 F.3d 1196, 1204 (10th Cir.2006) (quoting Fed. R. Civ. P. 15(a)). "The purpose of the rule is to provide litigants 'the maximum opportunity for each claim to be decided

---

[1] The amended complaint must remove defendants Terminal Consolidation Company and Nickell Properties, LLC as named defendants in the case.  Moreover, the amended complaint must remove all claims that the court hereby dismisses against the Unified Government and BNSF.

on its merits rather than on procedural niceties.'" *Id.* (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).   However, because the deadline for amending pleadings set forth in the scheduling order has already passed, plaintiffs must also satisfy Federal Rule of Civil Procedure 16(b)(4), which provides that "[a] schedule may be modified only for good cause and with the judge's consent." *See Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) ("After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard.").

The Rule 16(b)(4) analysis is the same for a motion for leave to amend as for a motion to enlarge time. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 990 (10th Cir. 2019).  The movant must "show the scheduling deadlines cannot be met despite the movant's diligent efforts."  *Id.* (quoting *Birch*, 812 F.3d at 1247).  "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Id.* (quoting *Birch*, 812 F.3d at 1247).  "If the plaintiff knew of the underlying conduct but simply failed to raise tort claims, however, the claims are barred." *Id.* (quoting *Birch*, 812 F.3d at 1247). Under Rule 15(a)(2), a district court "should refuse leave to amend only upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010).  Whether the amendment would prejudice the nonmoving party is the most important factor for a court in deciding a motion to amend the pleadings. *See Minter*, 451 F.3d at 1207.  Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment.

Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues. *Id*. at 1208.

The court finds that plaintiffs, in the unique circumstances presented here, have established good cause for modifying the scheduling order at this juncture. The scheduling order in this case established a January 7, 2020 deadline for amending the pleadings. After that deadline, this court, on March 3, 2020, ordered plaintiffs to file an amended complaint to cure various deficiencies raised by the Unified Government concerning, primarily, CAFA jurisdiction. Thus, the court and the parties contemplated the filing of an amended complaint after the deadline established in the scheduling order. The deadline for the filing of that amended complaint was March 18, 2020. Although plaintiffs filed an amended complaint on that date, plaintiffs' counsel indicates that it was filed in the midst of the early stages of the COVID-19 pandemic and during a local quarantine such that counsel's ability to work was significantly undermined. Between that filing and the filing of the proposed amended complaint in mid-May 2020, plaintiffs' counsel has been homeschooling his children (again, as a result of the pandemic). Moreover, the March 18, 2020 amended complaint was the first complaint that drew motions to dismiss from the other defendants and, as such, the proposed amended complaint represents the first real opportunity that plaintiffs have had to address the substantive deficiencies highlighted by defendants in their motions to dismiss. For these reasons, the court believes that good cause exists to modify the scheduling order.

The court also finds that leave to file the amended complaint should be granted under Rule 15(a)(2). While defendants BNSF and the Unified Government assert that the motion should be denied based on undue delay, the court rejects that argument for the same reasons it finds good

cause to modify the scheduling order.  They further contend that the motion should be denied based on futility.  But as explained below, the amendment is not futile and, to the extent indicated below, states plausible claims for relief.  The Unified Government is the only defendant to assert that the amendment is prejudicial but it claims prejudice based solely on its belief that its motion to dismiss the operative complaint will be rendered moot and cause additional work for the Unified Government.  The motions to dismiss, however, are not rendered moot because the court looks to the arguments therein to test the proposed amended complaint.  In other words, the court will apply the arguments in defendants' motions to dismiss to the proposed amended complaint.  For the foregoing reasons, plaintiffs' motion for leave to file an amended complaint (doc. 115) is granted, but that amended complaint must comply with the court's resolution of the motions to dismiss as detailed below and plaintiffs are prohibited from including any new allegations in that amended complaint.  The amended complaint must be filed no later than Friday, July 17, 2020.

*CAFA Jurisdiction*

Plaintiffs assert that this court has original jurisdiction over this case pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Under CAFA, a federal district court has subject matter jurisdiction over class actions involving at least 100 members and over $5 million in controversy when minimal diversity is met (between at least one defendant and one plaintiff-class member).  *See* 28 U.S.C. § 1332(d); *Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016).  The Unified Government asserts that plaintiffs have not met their burden to establish CAFA jurisdiction.  The court rejects this argument.  Minimal diversity is established in this case, even after the dismissal of defendants Terminal Consolidation Company and Nickell Properties,

LLC.  The named plaintiffs are Kansas citizens and BNSF is a citizen of Delaware and Texas.

Moreover, plaintiffs have plausibly alleged that the class has at least 100 members.  See Doc. 115-

1 ¶¶103-106.  Specifically, they allege that the affected neighborhood has roughly 58 homes and

that many of those homes are owned by individuals who are not living in the homes but are renting

those homes to other individuals.  Because both owners and occupiers are included in the class

definition, these allegations reasonably support a proposed plaintiff class size of greater than 100

members.  Finally, the court finds that plaintiffs have plausibly alleged damages in excess of

$5,000,000, in light of the number of class members affected as well as plaintiffs' allegations of

property damage and personal injury.  At this stage, it is certainly possible that plaintiffs could be

awarded damages in excess of $5,000,000.  *See Frederick v. Hartford Underwriters Ins. Co*., 683

F.3d 1242, 1247 (10th Cir. 2012) (CAFA jurisdiction is proper unless it is "legally impossible" to

recover more than $5,000,000); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (to

determine whether amount in controversy exceeds $5 million for CAFA jurisdiction, claims of

named and unnamed class members who fall within proposed class shall be aggregated).


*Pleading and Compliance with Notice Requirements of the KTCA*

The Unified Government moves to dismiss plaintiffs' claims for failure to plead that they

complied with K.S.A. § 12-105b(d) and it separately moves to dismiss plaintiff Ashley Negrete's

claims for failure to comply with K.S.A. §12-105b(d).  Kan. Stat. Ann. § 12-105b(d) requires a

person having a claim under the Kansas Tort Claims Act (KTCA) to provide written notice to a

Kansas municipality before bringing a tort suit against it.  *See* Kan. Stat. Ann. § 12-105b(d).  *See*

*Abouelenein v. Kansas City Kansas Community College*, 2020 WL 1528500, at *11 (D. Kan. Mar. 31, 2020). "This notice requirement is a condition precedent to suit against a municipality." *Id*.

The parties do not dispute that all plaintiffs, except plaintiff Ashley Negrete, have complied with the notice requirement. Nonetheless, the Unified Government asserts that dismissal is required because plaintiffs have failed to plead compliance with this condition precedent pursuant to Federal Rule of Civil Procedure 9(c). The Unified Government, however, directs the court to no recent cases indicating that Rule 9(c) imposes an obligation on plaintiffs to plead the performance or occurrence of conditions precedent, particularly when it is undisputed that compliance with those conditions has been satisfied.[2] The prevailing view appears to be that Rule 8(a)(2) places the burden on the plaintiff to plead the performance or occurrence of conditions precedent only where the performance or occurrence of conditions precedent is an element of the claim under the applicable substantive law. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1303 (4th ed. Westlaw 2020) (citing cases). Under those circumstances, Rule 9(c) provides that the pleading of a condition precedent may be done "generally." *Id.* ("Unfortunately, many courts have not appreciated this distinction, erroneously reading and applying Rule 9(c) as imposing an affirmative duty on plaintiffs to plead conditions precedent."). The Unified Government has not argued that fulfillment of the KTCA's notice requirement is an element of the underlying claims asserted here. Thus, because it is undisputed that plaintiffs, with

---

[2] The only recent case cited by the Unified Government is *Brooks v. Dixon*, 2013 WL 2318474, at *4-5 (Kan. Dist. Ct. 2013), a state court case not involving Rule 9(c) in which the court dismissed the claims of the plaintiff not only because he failed to plead compliance with the conditions precedent but because it was undisputed that he had not in fact complied with the notice requirements.

the exception of plaintiff Ashley Negrete, have satisfied the KTCA's notice requirement, the court will not dismiss those claims for failure to plead compliance under Rule 9(c).

The Unified Government moves to dismiss the claims of plaintiff Ashley Negrete for failure to comply with the KTCA's notice requirement.  While the Unified Government does not dispute that Ms. Negrete filed the requisite notice of her claims, it contends that Ms. Negrete filed this lawsuit prematurely—before the Unified Government denied her claim and prior to the expiration of the 120-day waiting period.  *See* K.S.A. 12-105b(d) (Once the notice is filed, "no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first.").  As Ms. Negrete highlights, however, although her complaint was prematurely filed, that defect was cured once she filed an amended complaint in July 2019, after the Unified Government denied her claim.  *See Steed v. McPherson Area Solid Waste Utility*, 43 Kan. App. 2d 75, 91 (2010) (where plaintiff filed petition without waiting for expiration of KTCA waiting period and without waiting for denial of claim, defect was cured by filing of amended petition after denial) (citing *Thompson v. Meyers*, 211 Kan. 26 (1973) (where an action has been commenced prematurely, the defect may be cured by filing an amended or supplemental petition after the cause of action has accrued, unless the amended petition changes the cause of action")).  The court, then, denies the Unified Government's motion to dismiss Ms. Negrete's claims.

*Motions to Dismiss*

Having resolved these threshold procedural issues, the court now turns to the substantive aspects of defendants' motions to dismiss.  In analyzing defendants' motions, the court accepts as

true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc*., 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). The court then determines whether plaintiffs have provided "enough facts to state a claim to relief that is plausible on its face." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (citations omitted). In determining the plausibility of a claim, the court looks to the elements of the particular cause of action, "keeping in mind that the Rule 12(b)(6) standard [does not] require a plaintiff to set forth a prima facie case for each element." *Id*. (quotations omitted). While "the nature and specificity of the allegations required to state a plausible claim will vary based on context," "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Id*. (citations and quotations omitted). Thus, a "claim is facially plausible if the plaintiff has pled 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Consistent with the above standard, the court accepts as true the following allegations in plaintiffs' proposed amended complaint. During the summer of 2017, significant flooding occurred on plaintiffs' properties in the Argentine neighborhood of Kansas City, Kansas. Defendant BNSF operates a rail yard north of plaintiffs' properties. Defendant Miles Leasing LLC owns a vacant lot west of plaintiffs' properties. Defendants Terminal Consolidation Company and Nickell Properties, LLC own and operate a terminal that lies north of plaintiffs' properties but south of BNSF's rail yard.

Plaintiffs allege that the flooding of their properties occurred in part because of a clogged drainage creek located west of their properties.  According to plaintiffs, Miles Leasing hired defendant Amino Bros. to remove trees from its vacant lot.  Amino Bros. removed these trees and also removed trees from BNSF's property.  Plaintiffs allege that a permit was required for this work but was not obtained from the Unified Government, although the Unified Government authorized the work in any event.  Plaintiffs allege that the removal of the trees removed a substantial ecological barrier with respect to water draining from the rail yard.  Plaintiffs further assert that either Miles Leasing or Amino Bros. disposed of the trees and other debris into the drainage creek.

According to the proposed amended complaint, other factors contributed to the flooding of plaintiffs' properties.  Specifically, plaintiffs allege that the Unified Government and BNSF "work in tandem" to "determine drainage and/or manage runoff from the Kansas River and/or rain fall in order to protect the rail yard and BNSF operations."  Toward that end, it is alleged that the Unified Government maintains and operates flood gates to the Kansas River and that BNSF owns and operates drainage gates on its property.  Plaintiffs allege that the Unified Government and BNSF did not properly control these gates and/or did not open these gates at the appropriate times which caused flooding on plaintiffs' properties.  With respect to the Unified Government, plaintiffs further allege that the Unified Government's pump stations within the storm water drainage system were not working properly and that the Unified Government failed to remedy the poor condition of the storm water drainage system in the Argentine neighborhood where plaintiffs reside, all of which contributed to significant flooding of the area during the summer of 2017.

Additional allegations will be set forth as they relate to the specific arguments raised in the motions to dismiss.

*Trespass*

In Count I of the proposed fourth amended complaint, plaintiffs assert a claim of trespass against all defendants.[3]  Plaintiffs allege that "[d]efendants unreasonably interfered with the flow of water from rain through the creek, causing the flooding of the area south of the railyard, causing great harm to the Plaintiffs."  Under Kansas law, a trespass can be intentional; the result of the defendant's negligence; or based on strict liability when the defendant engages in an abnormally dangerous activity.  *See Lofland v. Sedgwick Cty*., 26 Kan. App. 2d 697, 699 (1999) (citing *United Proteins, Inc. v. Farmland Indus., Inc*., 259 Kan. 725, 729 (1996)); *accord Thorpe v. Ryan E. Kraft Trust,* 2019 WL 2147874, at*8 (Kan. Ct. App. 2019) (tort of trespass may be intentional, the result of negligence, or based on strict liability when the defendant engages in an abnormally dangerous activity).[4] When a claim of intentional trespass is based on foreign matter intruding on

---

[3] As an initial matter, defendant BNSF asserts that plaintiffs' claims for trespass and nuisance must be dismissed because those claims can only be asserted by landowners and the allegations in the proposed amended complaint do not indicate whether the named plaintiffs are landowners as opposed to renters of the properties at issue here.  The court rejects this argument.  *See Klassen v. Central Kan. Co-op. Creamery Ass'n*, 160 Kan. 697, 705 (1946) (lawful possession is sufficient to support an action for damages for interference with the lawful enjoyment of the premises by the person in possession); *Frazee v. St. Louis-San Francisco Railway Co*., 219 Kan. 661 (1976) (trespasser is a person who enters or remains upon land in the possession of another).

[4] While it is not entirely clear whether plaintiffs are asserting claims of intentional trespass, negligent trespass, or both, the court construes the allegations in the proposed amended complaint as asserting both alternatives.

another's land, the plaintiff must show that "the defendant intended the foreign matter to intrude on the plaintiff's land or that the defendant performed the act with knowledge that the act would, to a substantial certainty, result in the foreign matter entering the plaintiff's land." *Muhl v. Bohi*,152 P.3d 93, 98 (Kan. App. 2007) (citing *United Proteins, Inc.*, 259 Kan. at 729).  In other words, plaintiffs must show that the flood of water onto plaintiffs' land was either purposeful or substantially certain to occur.  *United Proteins, Inc*., 259 Kan. at 731. A plaintiff may also show that a defendant engaged in negligent conduct in committing a trespass.  *Thorpe*, 2019 WL 2147874, at *8; Restatement (Second) of Torts § 165 (1965).

All trespass claims asserted against defendants Terminal Consolidation Company or Nickell Properties, LLC must be dismissed.  Plaintiffs' proposed complaint identifies no "act" on the part of defendants Terminal Consolidation Company or Nickell Properties, LLC.  Plaintiffs allege only that these defendants maintained property adjacent to plaintiffs' properties, and that flood waters passed through that adjacent property onto plaintiffs' properties.  This allegation does not plausibly state a claim for intentional or negligent trespass.  The proposed complaint is totally devoid of any allegation that plausibly suggests that Terminal Consolidation Company or Nickell Properties, LLC purposefully allowed water to pass onto plaintiffs' properties or that these defendants performed any act that resulted in water passing onto plaintiffs' properties.  Moreover, the proposed complaint is devoid of any allegations that plausibly suggests that either of these defendants owed a duty to plaintiffs for purposes of a claim for negligent trespass.  The court, then, dismisses plaintiffs' trespass claims against these defendants.[5]

---

[5] The only other allegation specific to defendants Terminal Consolidation and Nickell Properties is that those defendants undertook the "remedial measure" of constructing a dam in May 2020 to

In dismissing plaintiffs' trespass claims against defendants Terminal Consolidation Company and Nickell Properties, LLC, the court ignores certain allegations in the proposed amended complaint that either fail to differentiate wrongful acts among the multiple defendants or are simply too vague to identify the specific acts at issue. Plaintiffs allege in paragraph 32 of the proposed amended complaint that their properties were "invaded by flood waters" as a result of "multiple flood and/or rainfall events, with multiple factors pertaining to the conduct and/or omissions of one and/or more Defendants." In paragraph 42(e), plaintiffs allege that flood waters entered their properties

> as a result of problems caused by Defendants BNSF, Terminal Consolidation, Nickell Properties, LLC, and/or the UG. Specifically, any and/or each Defendant either intentionally did not fix any relevant problem and/or knew or should have known the damage their acts and/or omissions would cause resulting in flooding and/or water damage to Plaintiffs' homes and/or properties.

There is no factual content or context provided in the remaining allegations of the proposed amended complaint that sheds any light on what specific acts Terminal Consolidation or Nickell Properties are alleged to have taken that resulted in damage to plaintiffs. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (dismissing § 1983 claims against multiple defendants where alleged tortious acts of the Director of DHS, private owner of daycare, and individual social workers were presumably "entirely different in character and therefore ... mistakenly grouped in a single allegation"); *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1240 (10th Cir. 2013) (dismissing FDCPA claim because complaint made allegations against "a large and mostly anonymous group" and constituted "a litany of diverse and vague

---

prevent any further flow of water. This allegation obviously has no bearing on the cause of the flooding that occurred in 2017.

alleged acts ... with zero details or concrete examples"); *see also Matthews v. Bergdorf*, 889 F.3d 1136, 1148 (10th Cir. 2018) ("A complaint that fails to differentiate wrongful acts among multiple defendants, alleging instead multiple violations by unspecified defendants does not provide the fair notice the law requires."). Similarly, the court disregards plaintiffs' allegation there "exists a unity of interest between the Defendants . . . such that each had an interest in deflecting water and rain runoff from their respective properties." Even assuming these defendants had an "interest" in deflecting water off their properties, the complaint simply does not plausibly suggest that these defendants had a duty to do so or otherwise participated in any acts with any other defendant that might bear on the claims asserted.

BNSF is entitled to dismissal of plaintiffs' intentional trespass claims against it. In their proposed amended complaint, plaintiffs do not allege that BNSF purposefully caused water to flood onto plaintiffs' properties or that BNSF performed any act with knowledge that the act would, to a substantial certainty, result in water entering plaintiffs' properties. *See United Proteins, Inc.*, 259 Kan. at 729. Plaintiffs make only a handful of allegations that are specific to BNSF—that BNSF had a drainage easement through property owned by Terminal Consolidation Company and Nickell Properties, LLC; that defendant Amino Bros. removed trees on BNSF's property; that BNSF and the Unified Government worked in tandem to manage the drainage of water off the railyard, including managing runoff from the Kansas River; and that BNSF owned and maintained a drainage gate on its property that it failed to open, thereby permitting water to flood plaintiffs' properties. Accepting these allegations as true, none of those allegations plausibly suggest an intent on the part of BNSF to flood plaintiffs' properties or knowledge that BNSF's actions would, to a substantial certainty, result in water flooding plaintiffs' properties. Because

BNSF has not moved to dismiss plaintiffs' trespass claims to the extent those claims are based on negligent conduct, the court need not address those claims.

Similarly, the Unified Government is entitled to dismissal of plaintiffs' intentional trespass claims against it. Plaintiffs do not allege that the Unified Government purposefully caused water to flood onto plaintiffs' properties or that it performed any act with knowledge that the act would, to a substantial certainty, result in water entering plaintiffs' properties. See *United Proteins, Inc.*, 259 Kan. at 729. Plaintiffs make numerous allegations in their proposed amended complaint relating to the conduct of the Unified Government, but none of those allegations plausibly suggest an intent to flood plaintiffs' properties or knowledge that the Unified Government's actions would, to a substantial certainty, result in water flooding plaintiffs' properties. Specifically, plaintiffs allege that the Unified Government failed to exercise oversight over the tree-removal project despite the fact that the project required a permit and was authorized by the Unified Government; that the Unified Government failed to open one or more flood gates or drainage gates within its control thereby permitting water to flood plaintiffs' properties; that the Unified Government's pump stations within the storm water drainage system were not working properly; that BNSF and the Unified Government worked in tandem to manage the drainage of water off the railyard, including managing runoff from the Kansas River; and that the Unified Government failed to remedy the poor condition of the storm water drainage system in the Argentine neighborhood where plaintiffs reside. Without exception, these allegations sound in negligence. But, like BNSF, the Unified Government has not moved to dismiss plaintiffs' trespass claims to the extent those claims are based on negligent conduct. The court, then, need not address those claims with respect to the Unified Government.

*Nuisance*

In Count II of the proposed amended complaint, plaintiffs assert a claim of "public and/or private nuisance" against all defendants.   According to plaintiffs, defendants knowingly diverted rain water onto plaintiffs' properties, thereby interfering with plaintiffs' use and enjoyment of their properties.   The court agrees with defendant BNSF that any claim of public nuisance must be dismissed.   "A public nuisance is an unreasonable interference with a right common to the general public, such as a condition dangerous to health, offensive to community moral standards, or unlawfully obstructing the public in the free use of public property."   *State ex rel. Graeber v. Marion County Landfill, Inc.*, 276 Kan. 328, 342 (2003).   The Kansas Supreme Court has held that "a private individual has no action for the invasion of a purely public right, unless his damage is in some way to be distinguished from that sustained by other members of the general public." *Culwell v. Abbott Constr. Co.*, 211 Kan. 359, 363-64 (1973).   Plaintiffs do not address this argument in any respect and, by failing to oppose dismissal, they have effectively abandoned this claim.   Moreover, the proposed amended complaint sets forth no allegations that any defendant interfered with "a right common to the public" or that any plaintiff suffered a loss or injury peculiar to them and differing in kind from that sustained by the community at large.   Thus, plaintiffs have not alleged a plausible claim for public nuisance.   This claim is dismissed as to all defendants.

The court turns, then, to plaintiffs' claim for private nuisance, which is asserted as both a claim of intentional private nuisance and a claim of private nuisance based on negligence.   See Doc. 115-1, ¶ 125.   To the extent plaintiffs assert a claim of intentional private nuisance against

16

defendants Terminal Consolidation Company or Nickell Properties, LLC, those claims are dismissed. As explained in connection with the trespass claims, there are no allegations in the proposed amended complaint that plausibly suggest that these defendants engaged in any intentional acts that resulted in harm to plaintiffs. To the extent plaintiffs assert a claim of private nuisance based on negligence against these defendants, those claims are also dismissed. The only duty identified by plaintiffs in their response to defendants' motion to dismiss is the "duty not to let water run off of their property onto Plaintiffs." But in the absence of any allegation that these defendants altered their land or created a condition on their land that resulted in damage to plaintiffs' properties, the court discerns no duty owed to plaintiffs. *See Haas v. Levin*, 625 F.2d 1384, 1387 (10th Cir. 1980) (applying Colorado law but also relying on Prosser's Handbook of the Law of Torts); *Baldwin v. City of Overland Park*, 205 Kan. 1, 5 (1970) (an individual incurs liability when he or she damages the land of another person by casting water thereon which would not have flowed there naturally, either by changing the course of drainage, by causing surface water to accumulate and flow onto the land of another in greater quantities than would naturally have flowed there, or by collecting surface water into artificial channels in such quantities that it overflows onto adjoining property). If, for example, these defendants had constructed a dam or drainage ditch or otherwise constructed something that might increase flood hazards or unnaturally divert flood waters, then the defendants plausibly owed a duty of reasonable care to prevent injury to plaintiffs' properties. But here, plaintiffs allege only that defendants Terminal Consolidation Company and Nickell Properties, LLC simply failed to prevent water from passing through their land onto plaintiffs' properties. In such circumstances, plaintiffs have not plausibly

alleged that defendants owed a duty to plaintiffs and, therefore, have not plausibly alleged a private nuisance claim based on negligence.

To the extent plaintiffs assert a claim of intentional private nuisance against BNSF and/or the Unified Government, those claims are also dismissed.  As explained in connection with the trespass claims, there are no allegations in the proposed amended complaint that plausibly suggest that these defendants engaged in any intentional acts that resulted in harm to plaintiffs.  To the extent plaintiffs assert a claim of private nuisance based on negligence against these defendants, those claims are not dismissed because neither BNSF nor the Unified Government has moved to dismiss such claims.  In their motions, both BNSF and the Unified Government contend that any claim for private nuisance necessarily requires an "intentional interference" with plaintiffs' properties and, in the absence of any allegations of intentional interference, those claims must be dismissed.  But a private nuisance action may be brought on a theory of intentional conduct, negligence or strict liability.  *See Sandifer Motors, Inc. v. City of Roeland Park*, 6 Kan. App. 2d 308, 315 (1981).  As explained by the Kansas Supreme Court, nuisance is a field of tort liability defined by a result, which may be caused by conduct of differing levels of culpability.  *See Smith v. Kansas Gas Service Co*., 285 Kan. 33, 46-47 (2007).  Thus, plaintiffs are not required to plead intentional conduct to assert plausible claims of private nuisance against these defendants.  In their proposed amended complaint, plaintiffs expressly assert private nuisance claims based not only on intentional conduct, but on negligent conduct.

*Negligence*

In Count III of their proposed amended complaint, plaintiffs assert a claim of "negligence/gross negligence" against all defendants.  They allege that, on numerous occasions, "one and/or more of the Defendants negligently and improperly constructed, maintained and/or conducted business on the land north of the drainage creek, eliminating a substantial portion of the natural . . . barrier the trees provided, and upon information and belief caused the drainage creek to become clogged and flood waters to enter onto the Plaintiffs' homes, land and property."[6] "In order to establish negligence, a plaintiff must prove the existence of a duty, a breach of that duty, an injury, and proximate cause, that is, a causal connection between the duty breached and the injury suffered." *Williamson v. City of Hays*, 275 Kan. 300, 311, 64 P.3d 364, 372 (2003) (citing *Davey v. Hedden*, 260 Kan. 413, 426, 920 P.2d 420 (1996)).

As explained above in connection with plaintiffs' nuisance claims, the proposed amended complaint contains no factual content suggesting that Terminal Consolidation Company or Nickell Properties, LLC conducted any business or constructed anything that caused or contributed to the diversion of flood waters onto plaintiffs' properties.  There is no allegation that these defendants removed the trees themselves, authorized the removal of any trees, or otherwise engaged in any act relating to the clogging of the drainage creek.  At most, plaintiffs allege that Terminal Consolidation Company and Nickell Properties permitted water to flow through their properties onto plaintiffs' properties without taking any affirmative steps to prevent that flow.  In such circumstances, and in the absence of any allegation that these defendants took any action that increased flood hazards or unnaturally diverted flood waters, plaintiff has not plausibly alleged a

---

[6] This is yet another example of plaintiffs improperly combining multiple wrongful acts into a single allegation that fails to differentiate among the named defendants.

duty owed by these defendants to plaintiffs.  In the absence of any authority cited by plaintiffs that would impose a duty in these circumstances, plaintiffs' negligence claims against these defendants must be dismissed.

Both BNSF and the Unified Government move to dismiss plaintiffs' negligence claims, asserting that plaintiffs have not alleged a duty, a breach of that duty, or any connection between the duty breached and any injury sustained by plaintiffs.  The court rejects these arguments and concludes that plaintiffs' proposed amended complaint is sufficient to allege plausible claims of negligence against both BNSF and the Unified Government. In paragraphs 45 and 52 of the proposed amended complaint, plaintiffs allege BNSF owned and maintained a drainage gate on its property that it failed to open or otherwise properly control, thereby permitting water to flood plaintiffs' properties.  These allegations plausibly state a claim for negligence.  *See Baldwin v. City of Overland Park*, 205 Kan. 1, 5 (1970) (an individual incurs liability when he or she damages the land of another person by casting water thereon which would not have flowed there naturally, either by changing the course of drainage, by causing surface water to accumulate and flow onto the land of another in greater quantities than would naturally have flowed there, or by collecting surface water into artificial channels in such quantities that it overflows onto adjoining property). With respect to the Unified Government, plaintiffs allege that it failed to exercise oversight over the tree-removal project despite the fact that the project required a permit and was authorized by the Unified Government and that the removal of those trees caused plaintiffs' properties to flood; that the Unified Government failed to open one or more flood gates or drainage gates within its control thereby permitting water to flood plaintiffs' properties; that the Unified Government's pump stations within the storm water drainage system were not working properly and further

20

contributed to the flooding of plaintiffs' properties; and that the Unified Government failed to remedy the poor condition of the storm water drainage system in the Argentine neighborhood where plaintiffs reside.  Plaintiffs' allegations sufficiently allege the existence of a legal duty; breach of that duty; and causation between the breach and plaintiffs' injuries.  The motions are denied.

*Inverse Condemnation*

Finally, plaintiffs assert a claim of inverse condemnation against defendants BNSF and the Unified Government.  Inverse condemnation proceedings are initiated by a party having a property interest and are available when private property has been taken for public use without the initiation of formal condemnation proceedings by the government. *Estate of Kirkpatrick v. City of Olathe*, 289 Kan. 554, 559 (2009).  BNSF moves to dismiss this claim on the grounds that the allegations in the proposed amended complaint do not plausibly allege that BNSF it is a government entity or that it acted with governmental authority at any time.  The court agrees.  Although plaintiffs allege that BNSF and the Unified Government "worked in tandem" to manage drainage issues, this allegation does not suggest that BNSF somehow had the authority to take private property through condemnation proceedings. *See Northern Nat. Gas Co. v. L.D. Drilling, Inc*., 2010 WL 3892227, at *5 (D. Kan. Sept. 29, 2010) (gas company did not have governmental authority to take property; dismissing inverse condemnation claim against it).  The court, then, grants BNSF's motion to dismiss this claim. *See National Compressed Steel Corp. v. Unified Gov't of Wyandotte County/Kansas City*, 272 Kan. 1239, 1245 (2002) (inverse condemnation action "available only where private property has been actually taken for public use without formal condemnation

proceedings and it appears that there is no intention or willingness of the taker to bring such proceedings"); *Mid Gulf, Inc. v. Bishop*, 792 F. Supp. 1205, 1212 (D. Kan. 1992) ("Kansas courts have routinely held that for inverse condemnation to lie, it is usually required that an entity with eminent domain authority acquire possession of the property in question and control the property to the exclusion of the owner.").

The Unified Government moves to dismiss this claim solely on the grounds that plaintiffs are required to identify a public improvement project that affected their interest in real property and have not done so. But plaintiffs' allegations, taken together, plausibly satisfy the "public use" aspect of an inverse condemnation claim. *See Creegan v. State*, 305 Kan. 1156, 1161 (2017) (the three traditional elements for inverse condemnation are: (1) a private property interest (2) taken (3) for public use). Plaintiffs allege that the Unified Government owned and maintained a municipal storm water drainage system and flood control system, for the benefit of the public, that damaged plaintiffs' properties. *See Kipp v. City of Gypsum*, 2013 WL 452151, at * (Kan. Ct. App. Feb. 1, 2013) (suggesting that party could raise inverse condemnation claim based on City's flood control system but finding that claim barred by the statute of limitations). The Unified Government's motion to dismiss, then, is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Terminal Consolidation Company's motion to dismiss (doc. 95) is **granted in its entirety** and this defendant is dismissed from this action; defendant Nickell Properties, LLC's motion to dismiss (doc. 100) is **granted in its entirety** and this defendant is dismissed from this action; defendant

Unified Government's motion to dismiss (doc. 91) is **granted in part and denied in part**; and defendant BNSF's motion to dismiss (doc. 93) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's motion for leave to file to file an amended complaint (doc. 115) is **granted**, but that amended complaint must comply with the court's resolution of the motions to dismiss and plaintiffs are prohibited from including new allegations in that amended complaint. The amended complaint must be filed no later than **Friday, July 17, 2020.**

**IT IS SO ORDERED.**

Dated this 25th day of June, 2020, at Kansas City, Kansas.

_s/ John W. Lungstrum_
John W. Lungstrum
United States District Judge